UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERMAINE P., <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, <br><br> Defendant. | Case No. CV 17-2880-SP <br><br> MEMORANDUM OPINION AND ORDER |

## I.

## **INTRODUCTION**

On April 15, 2017, plaintiff Shermaine P. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision, whether the

Administrative Law Judge ("ALJ") properly considered the opinion of the treating physician. Motion for Summary Judgment ("P. Mem.") at 4-13; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-6.

Having carefully studied the parties' memoranda, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the opinion of the treating physician. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was thirty-five years old on the alleged disability onset date, attended school through the tenth grade. AR at 61, 184. He has past relevant work as a caretaker/home-attendant. *Id*. at 51.

On June 28, 2013, plaintiff filed an application for a period of disability and DIB, and on July 2, 2013, plaintiff filed an application for SSI, due to gunshot wounds, post-traumatic stress disorder ("PTSD"), and insomnia. *Id*. at 61, 70. The applications were denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 110-13, 118-25.

On January 12, 2016, the ALJ held a hearing. *Id*. at 35-60. Plaintiff, represented by counsel, appeared and testified at the hearing. *Id*. The ALJ also heard testimony from Edmond G. Carata, a vocational expert. *See id*. at 51-58. On February 18, 2016, the ALJ denied plaintiff's claims for benefits. *Id*. at 19-30.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since June 1, 2013, the alleged onset date. *Id*. at 21.

At step two, the ALJ found plaintiff suffered from the following severe impairments: a history of gunshot wounds, obesity, and PTSD. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually

or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1. *Id.*

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff had the RFC to perform light work, with the limitations that plaintiff could: stand and walk for a total of four hours out of an eight-hour day; interact with coworkers and supervisors on only an occasional basis; and have no contact with the public. *Id*. at 24.

The ALJ found, at step four, that plaintiff was incapable of performing his past relevant work as a caretaker/home-attendant. *Id*. at 29.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including production assembler, inspector, and handkerchief folder. *Id*. at 29-30. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 30.

Plaintiff filed a timely request for review of the ALJ's decision, but the Appeals Council denied the request for review. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

### III.
### **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

Plaintiff argues the ALJ failed to properly consider the opinion of his treating physician, Dr. Tyron C. Reece. P. Mem. at 4-13. Specifically, plaintiff contends the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Reece's opinion regarding plaintiff's mental

4

limitations.[2] *Id*.

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b).[3] In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide

---

[2] In his applications, plaintiff additionally alleged he had physical impairments resulting from gunshot wounds, and Dr. Reece also addressed plaintiff's physical impairments. But because plaintiff only claims error with respect to his mental limitations, this court will not discuss the medical records and opinions concerning plaintiff's physical health.

[3] All citations to the Code of Federal Regulations refer to regulations applicable to claims filed before March 27, 2017.

5

specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066-67 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

**Dr. Tyron C. Reece**

Dr. Tyron C. Reece, a family medicine physician, treated plaintiff from June 4, 2013 through at least November 30, 2015. *See* AR at 428, 460. At the initial visit, Dr. Reece conducted a physical examination. *See id.* at 368-69. Plaintiff reported that he had problems with his mood but did not elaborate. *See id.* at 371. Nor did Dr. Reece perform a mental status examination or note any psychological observations. *See id.* at 368-69. Based on plaintiff's history and the examination, Dr. Reece diagnosed plaintiff with, among other things, PTSD. *Id.* at 369.

Throughout the duration of treatment, Dr. Reece noted that plaintiff was hypervigilent, but also alert and oriented, had sound cognition, and exhibited appropriate behavior. *See id.* at 372-90, 430-61. On multiple occasions, Dr. Reece engaged plaintiff in some cognitive behavioral therapy. *See, e.g., id.* at 374, 376, 378, 386, 388, 390, 441, 443.

Dr. Reece appeared to have conducted a mental status examination on some unknown date. *See id.* at 432-58. Despite the fact that there are findings from a mental status examination on treatment notes across multiple dates, these findings appear either to be from the same examination or were recorded post-hoc. The observations from this mental status examination are written across the bottom of the first page of treatments notes dated August 2014 through October 2015.[4] *See*

---

[4] It appears that Dr. Reece started writing the results of the mental status examination on the July 17, 2014 treatment note and started over on the August

6

*id*. The observations are categorized and numbered, appear consecutively across the notes, and when combined would compose the elements of a single mental status examination. *See id*. During this mental status examination, Dr. Reece observed plaintiff was, among other things, angry at a friend, hostile, suspicious, hypervigilent, depressed, fully aware, and disdainful of his situation. *See id*. at 432-40. Dr. Reece also noted plaintiff had low self esteem, appeared detached, understood his situation, had an intact memory, and had good insight. *See id*. at 442-58.

Dr. Reece submitted two opinions. In January 2014, Dr. Reece wrote a narrative summary report. AR at 359-65. The January 2014 opinion primarily discussed plaintiff's physical impairments, but included in the report were observations from a mental status examination, in which Dr. Reece observed plaintiff was cooperative but guarded, was anxious, and felt detached and hopeless. *See id*. at 361-62. Dr. Reece explained plaintiff became anxious and diaphoretic when describing the shooting, isolated himself, and was easily distracted. *See id*. at 363-64. Dr. Reece diagnosed plaintiff with chronic PTSD and clinical depression neurosis. *Id*. at 362. In February 2014, Dr. Reece also completed a mental disorder questionnaire form in which he opined plaintiff was oriented, had good cognition, did not have a good outlook of the future, and was paranoid, hypervigilent, and withdrawn. *See id*. at 424-28. Dr. Reece stated plaintiff isolated himself, could not maintain focus, and had poor concentration. *See id*. at 427.

**Dr. Norma R. Aguilar**

On September 7, 2013, Dr. Norma R. Aguilar, a psychiatrist, examined plaintiff. AR at 342-45. Dr. Aguilar observed plaintiff was cooperative, coherent, slightly depressed and resentful, and alert and oriented. *See id*. at 343-44.

---

29, 2014 treatment note. *See* AR at 430, 432.

Plaintiff exhibited no looseness of thought, had no delusions, and claimed to have auditory and visual hallucinations. *See id.* at 344. Plaintiff was able to recall items immediately but not after five minutes, was able to recall his date of birth, was able to name three presidents, but was unable to perform serial sevens or threes. *See id.* Based on plaintiff's history and the examination, Dr. Aguilar diagnosed plaintiff with PTSD and opined he was mildly limited: in his ability to: interact appropriately with the public, coworkers, and supervisors; in his ability to respond to changes in a routine work setting; in his ability to respond to work pressure in a usual work setting; and in his daily activities due to physical problems. *Id.* at 345. Dr. Aguilar opined that plaintiff's prognosis was good with psychotherapy. *Id.* at 345.

**State Agency Physicians**

Two State Agency physicians opined plaintiff had only mild limitations with regard to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. *See id.* at 65, 74, 87, 100. Dr. M.D. Morgan only reviewed Dr. Aguilar's consultative examination and noted that plaintiff had not sought mental health treatment. *See id.* at 64-65, 73-74. Dr. George Davis reviewed Dr. Aguilar's opinion and Dr. Reece's January 2014 opinion, and noted that plaintiff had made no allegations of worsening symptoms since the September 2013 consultative examination. *See id.* at 86, 99.

**The ALJ's Findings**

In reaching his step two, step three, and RFC determinations, the ALJ gave weight to Dr. Aguilar's, Dr. Morgan's, and Dr. Davis's opinions, and gave little weight to Dr. Reece's opinion. *Id.* at 22-23. The ALJ gave Dr. Aguilar's opinion weight to the extent it was consistent with clinical signs, plaintiff's examination, and the record as a whole. *See id.* at 23. The ALJ disagreed with Dr. Aguilar's opinion regarding social functioning, finding that the record showed plaintiff had

greater limitations in the area of social functioning than Dr. Aguilar opined. *See id.* The ALJ gave the opinions of the State Agency's physicians weight to the extent they were consistent with the record as a whole. *See id.* Finally, the ALJ gave little weight to Dr. Reece's opinion because (1) his opinion was inconsistent with his recommended treatment; (2) the treatment notes did not support specific limitations; (3) he was not a specialist; and (4) his opinion was inconsistent with Dr. Aguilar's examination findings. *See id.*

    As an initial matter, although Dr. Reece opined plaintiff, among other things, was nervous, was anxious, felt detached, had difficultly concentrating, and isolated himself socially, he did not offer an opinion as to the severity of these limitations. The only specific limitation for which Dr. Reece opined a degree of severity was plaintiff's ability to deal with work stress. Dr. Reece opined plaintiff would have marked limitations in his ability to deal with work stress. *Id*. at 355-56. Therefore, even had the ALJ given weight to Dr. Reece's opinion, the exact extent of his opined limitations were unclear. Regardless, the ALJ did not need to decipher the severity of Dr. Reece's opined limitations because his reasons for discounting Dr. Reece's opinion were specific and legitimate and supported by substantial evidence.

    First, the ALJ gave little weight to Dr. Reece's opinion because it was inconsistent with his treatment plan. *Id*. at 23. Dr. Reece's January 2014 narrative opinion painted a picture of someone who suffered from severe symptoms of PTSD and required "extensive psychological therapy." *Id*. at 365. Despite the suggested severity of plaintiff's symptoms, the ALJ never referred plaintiff to a mental health specialist for treatment. *See id*. at 55. Nor did the ALJ prescribe any medication. Instead, Dr. Reece conducted some cognitive behavioral therapy with plaintiff himself. Had plaintiff's impairment been as disabling or severe as Dr. Reece suggested, it would be expected that he would have recommended

9

psychiatric treatment. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ properly rejected physician's opinion when it was inconsistent with his prescribed conservative treatment plan); *Long v. Colvin*, 2013 WL 4776553, at *4 (E.D. Cal. Sept. 4, 2013) ("An ALJ may validly reject a treating physician's [] opinion that is inconsistent with the plaintiff's conservative course of treatment."); *Cubilo v. Astrue*, 2012 WL 273754, at *7 (C.D. Cal. Jan. 31, 2012) (ALJ properly found that the physician's conservative treatment of plaintiff, which included cognitive behavioral therapy, was inconsistent with his opinion of a disabling mental impairment); *see also Randolph v. Comm'r*, 2017 WL 4038386, at *5 (C.D. Cal. Sept. 13, 2017) (characterizing cognitive behavioral therapy as conservative treatment).

Second, the ALJ discounted Dr. Reece's opinion because it was not supported by his treatment notes. AR at 23. Specifically, the treatment notes provided little insight into plaintiff's psychological functioning. *Id*. As discussed above, although Dr. Reece opined plaintiff had difficulties in certain areas such as concentration, he did not actually offer specific opinions regarding the degree of plaintiff's functional limitations. Nor do the treatment notes provide any support. The treatment notes only document that plaintiff was hypervigilent but provide no insight into how this affected plaintiff's functioning.

Moreover, plaintiff's argument that the treatment notes support severe limitations rests on the premise that Dr. Reece performed multiple mental status examinations which showed multiple findings throughout his course of treatment. *See* P. Mem. at 10-13. But as discussed above, although the mental status examination findings were written on multiple treatment notes, given how the notes were written, it appears that these findings were from one examination or were written post-hoc. This renders the findings from the mental status examination less reliable since it is unclear when the mental status examination

was performed and is actually highly suggestive that the mental status findings were not from a contemporaneous examination but rather a post-hoc account. Taking away the mental status examination notes, which are open to question, Dr. Reece's treatment notes only document a few consistent findings: hypervigilence; alertness; sound, adaptive, and integrated cognition; and appropriate behavior. *See* AR at 372-90, 430-61. These findings do not support severe functional limitations.

Third, the ALJ gave greater weight to Dr. Aguilar's opinion because he is a specialist and Dr. Reece is not. AR at 23. Dr. Aguilar is a psychiatrist while Dr. Reece is a family practitioner. It was proper for the ALJ to give Dr. Aguilar's opinion greater weight on the basis that she is a specialist. *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014) (the opinion of specialists are entitled to more weight as a matter of regulation); *Reed v. Massanari*, 270 F.3d 838, 845 (9th Cir. 2001) (noting that the agency generally gives more weight to specialists than to the opinion of a medical source who is not a specialist); *Smolen*, 80 F.3d at 1285 (same).

Fourth, the ALJ rejected Dr. Reece's opinion because it was inconsistent with the findings in Dr. Aguilar's examination. AR at 23. Inconsistency with the objective evidence is a specific and legitimate reason to discount a physician's opinion. *See Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). Plaintiff argues Dr. Reece's opinion was actually consistent with Dr. Aguilar's findings. P. Mem. at 11. But as discussed above, Dr. Aguilar's examination primarily had mild findings. *See* AR at 343-44. Plaintiff correctly notes that he was unable to perform serial sevens or serial threes, as well as recall objects after five minutes, during his examination. These findings suggest an impairment with memory and concentration, but Dr.

Aguilar did not offer any opinion as to either. *See id.* at 344-45. The fact that the findings regarding plaintiff's memory and concentration might be consistent with Dr. Reece's opinion does not overcome the fact that Dr. Aguilar's findings as a whole were inconsistent with Dr. Reece's opinion. And because the evidence can reasonably support the ALJ's determination, this court will not disturb it.

Plaintiff suggests the ALJ should have further developed the record because Dr. Aguilar did not have the opportunity to review plaintiff's treatment records. *See* P. Mem. at 7. An ALJ only has a duty to develop the record when it is ambiguous or inadequate. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"). Here, the ALJ retained a consultative examiner. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (the opinion of an examining physician that is based on independent clinical findings constitutes substantial evidence). Plaintiff did not allege his symptoms worsened after the consultative examination such that another examination was needed.

Finally, plaintiff argues the ALJ discounted both Dr. Reece's and Dr. Aguilar's opinion, and therefore – without a medical opinion to rely on – the ALJ was acting as his own medical expert. It is true that an ALJ may not act as his own medical expert, since he is "simply not qualified to interpret raw medical data in functional terms." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *see Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (hearing examiner should not go outside the record to medical textbooks to make his "own exploration and assessment" as to a claimant's impairments); *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); *Miller v. Astrue*, 695 F. Supp. 2d 1042, 1048 (C.D. Cal. 2010) (it is improper for the ALJ to act as the medical

expert); *Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) (ALJ is not qualified to extrapolate functional limitations from raw medical data). But that is not what happened here.

While the ALJ gave little weight to Dr. Reece's opinion, he expressly stated he gave weight to Dr. Aguilar's opinion, as well as the State Agency opinions. AR at 23. In assessing plaintiff's RFC, the ALJ imposed two limitations related to his mental impairments: only occasional interaction with coworkers and supervisors, and no contact with the public. *Id.* at 24. This is somewhat more restrictive than the opinions of Dr. Aguilar and the State Agency physicians, who found only mild limitations in this areas. *See id.* at 65, 87, 345. The ALJ found the record showed greater limitations in social functioning than opined by Dr. Aguilar, specifically finding moderate difficulties in this area based at least in part on plaintiff's hearing testimony. *Id.* at 22, 23. In giving weight to some of the physicians' opinions but nonetheless imposing greater limitations in one area than they opined based on his review of the medical evidence, the ALJ was simply discharging his duty to determine plaintiff's RFC, not acting as a medical expert. *See* 20 C.F.R. § 404.1546(c); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ . . . to determine residual functional capacity.").

Accordingly, the ALJ's rejection of Dr. Reece's opinion was supported by substantial evidence, and the ALJ did not err in assessing plaintiff's RFC without relying on Dr. Reece's opinion or further developing the record.

//
//

# V.
# **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: March 27, 2019

SHERI PYM
United States Magistrate Judge